## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **EMCEE ELECTRONICS, INC.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | Case No.   5:25-cv-885 |
| | § | |
| **METASPEC SERVICES, LLC, and** | § | |
| **ZELVA CAPITAL LLC,** | § | **DEMAND FOR JURY TRIAL** |
| | § | |
| *Defendants.* | § | |
| | § | |
| | § | |

## COMPLAINT

Emcee Electronics, Inc. ("Emcee") by and for its Complaint against Defendant Metaspec Services, LLC ("Metaspec) and Defendant Zelva Capital LLC ("Zelva") (collectively, "Defendants") alleges to the Court as follows:

## PARTIES

1.      Emcee is a company organized and existing under the laws of the State of Florida, with its principal place of business located at 520 Cypress Avenue, Venice, Florida 34285.

2.      Emcee is informed and believes that Defendant Metaspec is a limited liability company organized and existing under the laws of the State of Texas, with a principal place of business located at 355 Spencer Lane, Suite 1-112, San Antonio, TX 78201.  Upon information and belief, Nathan Wicker is the registered agent for Metaspec.

3.      Emcee is informed and believes that Defendant Zelva Capital LLC is a limited liability company organized and existing under the laws of the state of Texas with a principal place of business located at 355 Spencer Lane, Suite 1-112, San Antonio, TX 78201.  This is the same

principal place of business as that of Metaspec. Upon information and belief, like Metaspec, Nathan Wicker is the registered agent for Zelva.

4.     Upon information and belief, Zelva is a related entity to Metaspec—both Zelva and Metaspec share a registered office address and name Nathan Wicker as registered agents. (https://comptroller.texas.gov/taxes/franchise/account-status/search/32076914855); (https://comptroller.texas.gov/taxes/franchise/account-status/search/32080445680).

## JURISDICTION

5.     This is an action at law and in equity for trademark infringement under the Lanham Act, 15 U.S.C. § 1114; unfair competition, false designation of origin, and false advertising under the Lanham Act, 15 U.S.C. § 1125(a); cancellation of federal trademark application under 15 U.S.C. § 1119; deceptive and unfair trade practices under Fla. Stat. § 501.201, *et seq.*; and common law trademark infringement and unfair competition under Florida and/or Texas common law.

6.     This Court has subject matter jurisdiction over the claims pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a) and (b), and supplemental jurisdiction over the claims arising under the common law of the States of Texas and/or Florida pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy.

7.     This Court has personal jurisdiction over Defendants in that at all times pertinent hereto, upon information and belief, Defendants have been and/or are organized under the laws in this Judicial District and have and/or are committing infringing acts or other objectionable conduct in Texas and this District.

## VENUE

8.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendants are subject to personal jurisdiction in this District, due at least to Defendants' incorporation in Texas and their systematic business operations in Texas and this District.

## BACKGROUND

9.    Emcee is a family-owned business founded by Max Corzilius in 1958 that began by manufacturing and selling certain industrial measurement equipment in New Castle, Delaware.

10.    For example, in 1959, Emcee developed the Water Separometer, an instrument used to test water separation characteristics of diesel and jet fuels used in a variety of different applications. Emcee's Micro-Separometer® test instrument is used worldwide for quality control purposes to determine the amount of surface active materials (surfactants) present in fuel. Among other things, surfactants degrade the performance of filter separators used to remove water from the fuel. The presence of water can impair engine performance and initiate microbiological growth, which can cause corrosion in tanks and filter plugging in fuel lines.

11.    Over the course of its 67-year history, Emcee has continually refined its test equipment, and its original Water Separometer has evolved into the current Model 1140 Micro-Separometer® Mark X, imaged below:



([https://www.emcee-electronics.com/product/model-1140-micro-separometer/](https://www.emcee-electronics.com/product/model-1140-micro-separometer/)).

12.     Certain test methods associated with evaluating diesel and jet fuels call for the use of Emcee's Micro-Separometer® test instrument. These test methods for a wide variety of markets are provided by the standards organization, ASTM International, which was formerly known as the American Society for Testing Materials.

13.     For example, each of ASTM Test Method D3948, D7224, and D7261 employs the use of Emcee's Micro-Separometer® test instrument, which includes, among other things, a turbidimeter, a mechanical mixer, and a coalescer filter that is part of a disposable Test Kit, to evaluate the volume of surfactants in fuel.

14.    Emcee sells these proprietary Test Kits in "Six Packs." Each Test Kit contains vacuum packed expendables that are used to perform a single test. Each coalescer/filter is labeled to identify the type of fuel and the applicable ASTM method to be used. A container  of distilled water is also included in each Six Pack to perform water separation tests.

15.    Relevant here and sold in a Six Pack is Emcee's M-CELL® coalescer and its associated consumables, which are marketed and sold world-wide, including within the United States, to be used to test aviation fuels containing a particular additive. (https://www.emcee-electronics.com/blog/2014/03/25/tech-tips/model-1140-micro-separometer-test-a-variety-of-fuels/).

16.    Emcee's M-CELL® coalescer is the benchmark for aviation fuel testing under certain ASTM standards. The standard test method, ASTM D7224, titled "Standard Test Method for Determining Water Separation Characteristics of Kerosine-Type Aviation Turbine Fuels Containing Additives by Portable Separometer," requires use of Emcee's proprietary M-CELL® coalescer cell. A true and correct copy of the ASTM D7224 test standard is attached hereto as **Exhibit 1**.

17.    The ASTM D7224 test method provides a measurement of the presence of surfactants in aviation turbine fuels and can detect trace amounts of refinery treating chemicals in fuel, as well as surface active substances added to fuel in the form of additives or picked up by the fuel during handling from point of production to point of use. **Exhibit 1**, §5.1; **Exhibit 8**, Declaration of Marie F. Calhoon, ¶8.

18.    Using Emcee's Micro-Separometer® test instrument, the test method is performed by creating a water and fuel sample emulsion in a syringe using a high speed mixer. **Exhibit 8**, ¶11. The emulsion is then expelled from the syringe at a programmed rate through a specific coalescer, and the effluent is analyzed for uncoalesced water (i.e. dispersed water droplets) by a light transmission measurement. *Id.* A test can be performed in five to ten minutes. **Exhibit 1**, §4.1; **Exhibit 8**, ¶11.

19.    Emcee's M-CELL® coalescer is the only coalescer and test kit currently listed under the ASTM D7224 standard—all tests performed under this standard require use of an Emcee M-CELL® coalescer. **Exhibit 1**, §3.3.1; **Exhibit 8**, ¶¶8-10.

20.    Emcee's innovations also include coalescer cells required for use in other ASTM standard test methods, including the "Alumicel Coalescer" for use with aviation turbine fuel in ASTM D3948, "D-Cell Coalescer" for use with diesel fuel and diesel fuel with additive in ASTM D7261, and "Clear & Bright Coalescer" used with aviation turbine and diesel fuels in ASTM D4860.    (https://www.emcee-electronics.com/blog/2014/03/25/tech-tips/model-1140-micro-separometer-test-a-variety-of-fuels/).  These too are sold as Six Packs.

21.    Upon sale of Emcee's proprietary coalescer consumable kits and Micro-Separometer® equipment, among instructions and other applicable materials, Emcee provides its customers a memorandum detailing the importance of using Emcee's M-CELL® coalescer cells with the ASTM D3948 and D7224 test methods, including how the M-CELL® is designed with a press fit safety feature. A true and correct copy of this memorandum is attached hereto as **Exhibit 7**.

## THE MARK-IN-SUIT

22.    For nearly three decades, Emcee has been using and promoting the M-CELL mark in connection with its coalescer cell and consumables. Over that time, the M-CELL coalescer cell

and consumables have become the industry-wide standard, and Emcee has spent substantial time and money in promoting and selling related goods and services under the M-CELL mark.

23.    Emcee is the registered owner of the M-CELL trademark on the Principal Register of the U.S. Patent and Trademark Office, which is not limited to any particular font style, size, or color (the "M-CELL Mark"):

| Mark/Reg. No. | Status/Key Dates | Goods/Services |
|---|---|---|
| M-CELL<br><br>Reg. No. 2,556,362 | First use: January 1, 1996<br><br>Filed: April 20, 1998<br><br>Registered: April 2, 2002 | Filter/separator element for separating water from hydrocarbon fuels<br><br>(Int'l Class: 7) |

A true and correct copy of the registration certification for the M-CELL Mark is attached hereto as **Exhibit 2**.

24.    Emcee has valid and protectable rights in its M-CELL Mark.

25.    The M-CELL Mark has been used continuously for at least five years since its registration, and thus has become incontestable pursuant to 15 U.S.C. § 1065, thereby constituting conclusive and independent evidence of Emcee's exclusive right to use the M-CELL Mark in commerce in connection with the goods and services identified in the registrations.

## DEFENDANTS' INFRINGING ACTS

26.    Defendants are currently developing a coalescer test cell and consumables kit that attempts to mirror Emcee's M-CELL® coalescer.

27. Without Emcee's consent or authorization and beginning many years after Emcee acquired protectable exclusive rights in its M-CELL Mark, Defendants adopted and began calling its copycat coalescer and consumables kit, the "Z-CELL" (the "Z-CELL Mark").

28. A currently pending application to register the Z-CELL Mark was filed with the United States Patent and Trademark Office by Zelva with an identified intent to use the Z-CELL Mark in commerce. A true and correct copy of the Z-CELL trademark application is attached hereto as **Exhibit 3**.

29. Defendants have begun proceedings within ASTM subcommittee D02.J0.05 and full committee D02 to seek approval to have Defendants' Z-CELL coalescer and test kits approved for use in the ASTM D7224 standard test. (https://www.astm.org/membership-participation/technical-committees/workitems/workitem-wk91331).

30. Defendants have also begun proceedings within ASTM to seek approval to have Defendant's coalescer and test kits approved for use in the ASTM D3948 standard test. (https://store.astm.org/products-services/standards-and-publications/standards/workitem-wk95607).

31. Defendants began using the Z-CELL Mark publicly in or around December 10-11, 2024, in a presentation made by Nathan Wicker at an ASTM committee meeting, proposing modification of the ASTM D7224 standard to include the Z-CELL.   A true and correct copy of this presentation bearing the Metaspec logo is attached hereto as **Exhibit 4** ("the Offending Presentation").

32. Defendants have provided products bearing the Z-CELL Mark for use in testing in connection with the ASTM submissions and lab studies. *See* **Exhibit 4**, slides 5-12. Such testing

was not authorized by Emcee, and as described in Emcee's "Memo to Users," would "invalidate the test readings and void any warranty or calibrations services provided by Emcee." **Exhibit 7**.

33.    The Z-CELL Mark adopted and used by Defendants is confusingly similar to Emcee's M-CELL Mark as both marks include a single letter followed by "-CELL" and both marks are used is connection with overlapping goods—single use coalescer and fuel testing kits.

34.    Defendants' design for the Z-CELL coalescer and test kit design is nearly identical to Emcee's M-CELL® coalescer and test kit, as shown below:



**Exhibit 4,** slide 8.

**DEFENDANTS' FALSE STATEMENTS AND UNFAIR PRACTICES**

35.     The Offending Presentation contains representations of fact that are literally false or misleading, including about Emcee's M-CELL® product. For example, as it relates to Emcee's M-CELL® coalescer and test kit, the Offending Presentation states that "[t]he M-cell [*sic*] filter cartridge is press fit to the end of the syringe by the operator" and falsely states there are two common failures associated with the M-CELL® coalescer, namely that (i) the "[o]perator is not able to attach the syringe filter quickly enough, so filter has to be discarded and test restarted," and (ii) the M-CELL® coalescer "[f]ilter is not securely attached" and "detaches under pressure, allowing pressurized jet fuel to spray all over the instrument and operator." **Exhibit 4**, slide 3. As it relates to Defendants' Z-CELL, the Offending Presentation falsely states, at minimum, that the Z-CELL is "[s]afer," and more "consistent" than Emcee's M-CELL® coalescer. *Id.* at slide 4. The Offending Presentation likewise falsely represents "Zcells [*sic*] produce equivalent results to Emcee M-cells across a wide range of fluids and MSEP scores." *Id.* at slide 9.

36.     The Offending Presentation states that the Z-CELL coalescer is "[s]afer" because it purportedly "[p]revents pressurized jet fuel leaks in the lab." This statement is literally false and misleading. The Z-CELL coalescer includes a "Luer-Lock" style fitting, which screws into the syringe during the fuel test procedure. Expert analysis illustrates that using such a Luer-Lock style fitting with the ASTM D7224 standard test creates a major safety concern because when placed under pressure, the syringe can rupture and spray jet fuel at an operator. *See* **Exhibit 8**, ¶¶17, 23 ("Use of a Luer Lock fitting could be considered analogous to a pressure cooker without any release valve, and when a rupture does occur, the vaporized/atomized fuel that is ejected is more dangerous to an operator."); **Exhibit 7**.

37.     Defendants' representation that the Z-CELL's use of a Luer Lock style fitting as "safer" is false and in fact, the Luer Slip fitting used in Emcee's M-CELL® is a safer choice. **Exhibit 8**, ¶23.

"Because of the tight 'locking' feature [of Defendants' Luer Lock], there is no possible relief for the pressure . . . . [T]he high pressures involved means that the ejected fuel is vaporized/atomized, which is dangerous due to its quick ignition characteristics." *Id.* at ¶19. By way of example, the vaporization/atomization that may result in pressure build-up with Defendants' Z-CELL coalescer is highlighted in the image below:



38.     In contrast, the Luer Slip fitting used by Emcee breaks the connection between the syringe sample and coalescer cell when the pressure reaches a proprietary level, releasing any fuel into the Micro-Separometer® test instrument catch basin without any vaporization or atomization. *Id.* at ¶21. The liquid fuel released into the Micro-Separometer® instrument catch basin is safer than vaporized or atomized fuel because it maintains a lower possibility of ignition. *Id.* at ¶¶15-16, 21. By way of example, the following images demonstrate this process:

fuel



fuel

No vaporized or atomized fuel



39.     The unsafe nature of the Z-CELL is further demonstrated by numerous negative votes on the ASTM subcommittee and main committee ballots in response to Defendants' request to modify the ASTM D7224 test standard to include the Z-CELL. A true and correct copy of the ASTM D7224 work item WK93931 sub-committee ballot is attached hereto as **Exhibit 5** ("I vote negative on this ballot item because of the safety concern using a Luer Lok style fitting on the coalescer cell. … The locking mechanism was removed years ago because of the back pressure that pushed jet fuel out of the syringe into the operators face in more than one incidence This negative is based on my personal experience running the test and training technician in the field and in my own laboratory…") and a true and correct copy of the ASTM D7224 Main Committee Ballot Report D02 (25-04) is attached hereto as **Exhibit 6** (same). *See also* **Exhibit 8**, ¶17. The main ballot is rife with negative votes premised on the safety risk of the Z-CELL: "[I]t is alleged that the use of a Luer-Lok style fitting on the ZCell test coalescer cell improves safety. This statement is not only false but dangerous, because in fact, the use of a Luer-Look fitting . . . puts a user of the Zcell in great danger . . . ." **Exhibit 6**, 115, 129, 153.

40.     Defendants' representation that the Z-CELL produces "equivalent results" to the M-CELL® coalescer is also literally false and misleading. In purported support of this statement, the Offending Presentation provided data on its testing procedures. However, when using ASTM guidelines for statistical data analysis, Defendants' own lab data demonstrates that the Z-CELL does not produce "equivalent results." This is highlighted by two negative votes on the ASTM subcommittee ballot on Defendants' request to modify the ASTM D7224 test standard, noting that the statistical analysis relating to equivalency was flawed. **Exhibit 5**, 2-4, 6; *see also* **Exhibit 8**, ¶17; **Exhibit 6**, 117.  In addition, negative votes on the ASTM main ballot indicate that Defendants' study was limited in scope to a small number of jet fuels from a limited distribution area, basing

its alleged equivalency to the M-CELL® coalescer on a "hand picked set of samples that do not necessarily represent what is tested at different points in the jet fuel distribution system." **Exhibit 6**, 123, 125, 137-38.

41.    Defendants' infringing acts and false statements associated with their copycat product as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of Defendants' goods and/or services and are likely to deceive the relevant consuming public into mistakenly believing that Defendants' goods and/or services originate from, are associated with, and/or are otherwise authorized by Emcee or connected in some way to the proprietary Micro-Separometer® test instrument and M-CELL® coalescer cell and test kit.

42.    On July 1, 2025, Nathan Wicker, principal of Metaspec and Zelva, sent an email to Emcee requesting that Emcee withdraw its negative votes in the ASTM committee ballot. A true and correct copy of this email correspondence is attached hereto as **Exhibit 9**. In the correspondence, Defendants have engaged in an unfair and deceitful fishing expedition, seeking sensitive and proprietary information from Emcee under the guise of resolving Emcee's significant objections identified in the ASTM balloting process, including for example, requesting information about the "design force limits" for pressures that Emcee products are designed to operate at safely. **Exhibit 9**. Such information is proprietary and maintained as trade secret information, which Defendants are attempting to unfairly access by engaging in the ASTM balloting procedures in bad faith.

43.    Upon information and belief, Defendants' acts were and are willful and were and are being undertaken with the deliberate intent to trade on the goodwill that Emcee has developed, including with its M-CELL Mark, and to cause confusion and deception in the marketplace.

## COUNT I

## INFRINGEMENT OF REGISTERED TRADEMARK UNDER 15 U.S.C. § 1114

44.    Emcee repeats and realleges each and every allegation contained in paragraphs 1-43, inclusive, as fully set forth herein.

45.    Defendants' unauthorized use in commerce of the Z-CELL Mark as alleged herein is likely to cause confusion as to the sponsorship, affiliation, connection, and/or association between Defendants and Emcee and is likely to cause consumers to believe, contrary to fact, that Defendants' overlapping goods and/or services are sold, authorized, endorsed, or sponsored by Emcee or that Defendants are in some way affiliated with or sponsored by Emcee. Defendants' conduct therefore constitutes infringement of Emcee's M-CELL Mark in violation of 15 U.S.C. § 1114.

46.    Specifically, these actions constitute infringement of the M-CELL Mark registered as Reg. No. 2,556,362.

47.    Upon information and belief, Defendants' infringement of Emcee's registered M-CELL Mark has been and is deliberate, willful, and in bad faith.

48.    As a direct and proximate result of the unlawful acts described above, Emcee has been and/or will be imminently damaged, and Defendants have been unjustly enriched, in an amount to be determined at the time of trial.

49.    Unless enjoined by this Court, Defendants' unlawful acts will continue to cause irreparable damage, loss, and injury to Emcee for which it has no adequate remedy at law.

50.    Pursuant to 15 U.S.C. §§ 1116-1117, Emcee is entitled to injunctive relief, actual damages in an amount to be determined at trial, to have such damages trebled, to Defendants' profits, to the costs of this action, and to its attorneys' fees.

## COUNT II

### FALSE DESIGNATION OF ORIGIN, UNFAIR COMPETITION, AND FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a)

51.    Emcee repeats and realleges each and every allegation contained in paragraphs 1-50, inclusive, as fully set forth herein.

52.    In addition to the registered M-CELL Mark, Emcee also owns valuable common law trademark rights associated with its coalescer that is included within the single use consumable test kit sold in Six Packs.  By virtue of Emcee's use of "M-CELL" in connection with the promotion and sale of its goods and services, M-CELL has gained widespread consumer recognition and has developed valuable associated goodwill attributable to Emcee.

53.    Upon information and belief, Defendants have used, are using, and/or soon intend to use the Z-CELL Mark in interstate commerce, without the consent of Emcee, to identify Defendants' overlapping goods and/or services in connection with the advertising and promotion of such goods and/or services.

54.    Defendants' unauthorized use in commerce of the Z-CELL Mark as alleged herein is likely to cause confusion as to (1) the affiliation, connection, and/or association between Defendants and Emcee; (2) the sponsorship, endorsement, and/or approval of Defendants' goods and/or services by Emcee; and (3) the origin of Defendants' goods and/or services. Defendants' conduct therefore violates 15 U.S.C. § 1125(a).

55.    Upon information and belief, Defendants' infringement of Emcee's common law rights associated with "M-CELL" has been and is deliberate, willful, and in bad faith.

56.    Further, Defendants have made literally false and/or misleading statements of fact about their own Z-CELL product, as well as Emcee's M-CELL® coalescer and test kit, at least in the Offending Presentation, which was made during an ASTM Committee D02 on Petroleum

Products and Lubricants meeting. Approximately 1,000 members attend the semi-annual meeting, many of which are would-be consumers of Emcee's products, including the Emcee M-CELL® coalescer and single use test kit including the same. (https://www.astm.org/membership-participation/technical-committees/committee-d02).

57.    Defendants' false or misleading statements of fact have been made in commercial advertising placed in interstate commerce in the form of representations made to ASTM committee members and the general public through public efforts to modify ASTM test standards and pursue commercial markets. (https://www.astm.org/membership-participation/technical-committees/workitems/workitem-wk91331).

58.    As a direct and proximate result of the unlawful acts described above, Emcee has been and/or will be imminently damaged, and Defendants have been unjustly enriched, in an amount to be determined at the time of trial. Specifically, Emcee has suffered or will imminently suffer reputational harm from Defendants' literally false or misleading statements. If Defendants' false or misleading statements result in successful modification to the ASTM D7224 standard test, upon information and belief, Defendants will thereafter enter the market and compete directly in the market of coalescer and consumable test kits for use with the ASTM D7224 standard test, representing an imminent threat of direct injury to Emcee in the form of lost sales.

59.    Unless enjoined by this Court, Defendants' unlawful acts will imminently cause, and continue to cause irreparable damage, loss, and injury to Emcee for which it has no adequate remedy at law.

60.    Emcee has standing to bring this action under 15 U.S.C. § 1125(a) because if Defendants are successful in their efforts with ASTM, Defendants are (or imminently will be) a direct competitor of Emcee in the market for jet-fuel coalescer and consumable test kits for use

with the ASTM D7224 standard test. Defendants made false and misleading statements of fact during a presentation to an ASTM subcommittee, a forum known to influence industry-wide purchasing decisions and standards development. These statements were intended to, and did, misrepresent the functionality, compliance, and comparative performance of Defendants' product in relation to Emcee's M-CELL® coalescer and test kit. Defendants' deception is material because it is likely to influence the relevant consuming public's purchasing decisions. Defendants' false representations were made in a commercial context and disseminated in a manner likely to reach actual and potential customers, regulators, and industry participants, thereby causing Emcee competitive injury including imminent loss of sales opportunities, reputational harm, and erosion of goodwill. Emcee's alleged injuries fall within the zone of interests protected by the Lanham Act and were proximately caused by Defendants' false statements of fact in a commercial setting.

61.    Pursuant to 15 U.S.C. §§ 1116-1117, Emcee is entitled to injunctive relief, actual damages in an amount to be determined at trial, to have such damages trebled, to Defendants' profits, to the costs of this action, and to its attorneys' fees.

## COUNT III

### CANCELLATION OF FEDERAL TRADEMARK APLICATION UNDER 15 U.S.C. § 1119 BECAUSE OF THE LIKLIHOOD OF CONFUSION

62.    Emcee repeats and realleges each and every allegation contained in paragraphs 1-61, inclusive, as fully set forth herein.

63.    Zelva has filed an application to register the Z-CELL Mark on the federal register of the U.S. Patent and Trademark Office, claiming a *bona fide* intent to use the Z-CELL Mark in commerce in connection with a "[f]uel filter for separating water from jet fuel," within the identical class (7) that Emcee has protectable rights in the M-CELL Mark.

64.     Zelva has no right or entitlement to the registration or use of the Z-CELL Mark, at least because, as set forth above, the Z-CELL Mark "[c]onsists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another and not abandoned, [i.e., the M-CELL Mark,] as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive" in violation of 15 U.S.C. § 1052(d).

65.     Should the Z-CELL Mark be registered, Defendants' use of the Z-CELL mark will imminently cause and/or continue to cause damage, loss, and injury to Emcee, at least because such use is likely to cause confusion as to the sponsorship, affiliation, connection, and/or association between Defendants and Emcee and is likely to cause consumers to believe, contrary to fact, that Defendants' goods and/or services are sold, authorized, endorsed, or sponsored by Emcee or that Defendants are in some way affiliated with or sponsored by Emcee or in some way connected to the M-CELL Mark in violation of 15 U.S.C. § 1064.

66.     Emcee's M-CELL Mark – and this litigation relating to Defendants' trademark infringement of the same – have a sufficient nexus to the pending Z-CELL Mark application. The Z-CELL Mark application is therefore subject to cancellation in this action pursuant to the Lanham Act, 15 U.S.C. § 1119.

## COUNT IV

**VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT UNDER FLA. STAT. § 501.201 *ET SEQ***

67.     Emcee repeats and realleges each and every allegation contained in paragraphs 1-66, inclusive, as fully set forth herein.

68.     Emcee's and Defendants' relationship, to the extent there is one, does not center in Texas, but instead within the State of Florida where Emcee has been located and doing business for at least 50 years.

69.     Defendants' conduct as alleged and described above further constitutes unfair and deceptive acts or practices in the conduct of a business, trade, or commerce in violation Fla. Stat. § 501.201 *et seq*.

70.     Upon information and belief, Defendants' actions have been and are deliberate, willful, and in bad faith.

71.     As a direct and proximate result of the unlawful acts described above, Emcee has been and/or will imminently be damaged at least within the State of Florida, and Defendants have been unjustly enriched, in an amount to be determined at the time of trial.

72.     Unless enjoined by this Court, Defendants' unlawful acts will continue to cause irreparable damage, loss, and injury to Emcee for which it has no adequate remedy at law.

<u>**COUNT VI**</u>

**COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**

73.     Emcee repeats and realleges each and every allegation contained in paragraphs 1-72, inclusive, as fully set forth herein.

74.     Defendants' conduct as alleged and described above further constitutes trademark infringement and unfair competition under Florida and/or Texas common law.

75.     Upon information and belief, Defendants' actions have been and are deliberate, willful, and in bad faith.

76.     As a direct and proximate result of the unlawful acts described above, Emcee has been damaged, and Defendants have been unjustly enriched, in an amount to be determined at the time of trial.

20

77.    Unless enjoined by this Court, Defendants' unlawful acts will continue to cause irreparable damage, loss, and injury to Emcee for which it has no adequate remedy at law.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Emcee respectfully requests that this Court enter an Order and Judgment against Metaspec as follows:

A.    For a judgment that Defendants have infringed Emcee's trademark rights in violation of the Lanham Act, 15 U.S.C. § 1114;

B.    For a judgment that Defendants have engaged in unfair competition and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a);

C.    For an order cancelling the pending federal trademark application for Z-CELL under 15 U.S.C. § 1119;

D.    For a judgment that Defendants engaged in deceptive and unfair trade practices under Fla. Stat. § 501.201, *et seq.*;

E.    For a judgment that Defendants have engaged in trademark infringement and unfair competition in violation of the common law of Florida and/or Texas;

F.    For a judgment that Defendants' foregoing misconduct was willful;

G.    For a preliminary and permanent injunction enjoining Defendants and their agents, officers, directors, employees, and all persons in privity or active concert or participation with them, directly or indirectly, from engaging in the foregoing misconduct;

H.    For an order awarding Emcee, under 15 U.S.C. § 1117, all profits received by Defendants from the sales and revenues of any kind made as a result of Defendants' infringement of Emcee's trademark rights (including, but not limited to, damages awarded pursuant to 15 U.S.C. § 1117 trebled);

I.      For a judgment and award of any supplemental damages sustained by Emcee for any continuing post-verdict infringement of Emcee's trademark rights until entry of final judgment with an accounting as needed;

J.      For an order finding that this case is exceptional and awarding Emcee its costs, expenses, and disbursements incurred in this action, including reasonable attorneys' fees as available by law to be paid by Defendants;

K.      For an award of pre-judgment interest, post-judgment interest, and costs in this action; and

L.      For an award of such other relief to Emcee as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Emcee demands a trial by jury on all issues so triable.

DATED: July 25, 2025                    Respectfully submitted by:

                                        **FOLEY & LARDER LLP**

                                        _/s/ Rachel L.Gillespie_
                                        Kadie M. Jelenchick, _pro hac vice_ to be filed
                                        777 East Wisconsin Avenue
                                        Milwaukee, WI 53202
                                        Telephone: 414.271.2400
                                        Fax: 414.297.4900
                                        kjelenchick@foley.com

                                        Jack T. Carroll, _pro hac vice_ to be filed
                                        150 East Gilman Street
                                        Madison, WI 53703
                                        Telephone: 608.257.5035
                                        Fax: 608.258.4258
                                        jcarroll@foley.com

                                        Rachel L. Gillespie
                                        State Bar No. 24144005
                                        2021 McKinney Avenue
                                        Dallas, TX 75201
                                        Telephone: 214.999.3000
                                        Fax: 214.999.4667
                                        rgillespie@foley.com

                                        **_Attorneys for Plaintiff Emcee Electronics, Inc._**